UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HEATHER MARIE SAARI,                            Case No. 2:21-cv-00163

          Plaintiff,                            Hon. Maarten Vermaat
                                                U.S. Magistrate Judge
     v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____/

## OPINION

### I.    Introduction

In January of 2019, Plaintiff Heather Maire Saari filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  (ECF No. 6-2, PageID.79.)  Saari suffers from a number of severe impairments, including psoriatic arthritis, depression/bipolar II disorder, and anxiety.  (*Id*., PageID.82.) The Social Security Administration denied Saari 's application, and Saari requested a hearing before an Administrative Law Judge (ALJ).  (*Id*., PageID.79.)  ALJ Ritter conducted this hearing on May 29, 2020.  (*Id*.)  On June 4, 2020, Judge Ritter issued a decision ruling that Saari was not under a disability from the alleged onset date through the date of decision.  (*Id*., PageID.93.)

Saari now appeals Judge Ritter's decision.  (ECF No. 11.)  She argues that the ALJ erred in not considering her health records from an inpatient hospitalization at UP Health System Marquette and a medical source statement

completed by her primary care provider, Lorreta Leja, M.D.  (*Id*.)  Saari argues that the ALJ erred in formulating her residual functional capacity (RFC) by failing to properly consider this additional evidence and evaluate the evidence of record as a whole.  (*Id*.)

In the opinion of the undersigned, the ALJ's exclusion of Saari's additional health records was proper.  The evidence did not show a reasonable probability that it would change the outcome of the decision and thus cannot be considered material. Additionally, the ALJ's RFC assessment was based upon the overall record. Substantial evidence supports the ALJ's conclusion that Saari's description of the disabling effects of her symptoms were inconsistent with the evidence of the record. After careful consideration of the arguments and documents provided by the parties, the Court affirms ALJ Ritter's decision.

## II.   Summary of Plaintiff's Background and Medical Care and Evaluations During Relevant Period

After being diagnosed with psoriatic arthritis, Saari began treatment with the medication Humira in May 2015.  (ECF No. 6-10, PageID.1057.)  In March of 2016, Saari reported that she had significant improvement and that she felt she had gotten her life back to normal.  (*Id*., PageID.1050.)  She described her pain as a 0 on a scale of 0 to 10, and the physician stated that her condition was stable on Humira. (*Id*.)  In 2018 and 2019, a physician again noted that Saari's condition was clinically stable with no active disease.  (*Id*., PageID.1066, 1073, 1076.)  Physical examinations in 2016, 2017, 2018, and 2019 concluded that Saari demonstrated good function.  (*Id*., PageID.1051, 1056, 1060, 1064, 1071, 1074, 1079, 1082.)

Saari's mental impairment symptoms are persistent, but treatment records demonstrate that her symptoms were largely managed by medication from her primary care provider, Dr. Leja.  In August of 2017, Saari began seeing Dr. Leja for bipolar disorder, anxiety, and depression.  (ECF No. 6-8, PageID.593.)  In December of 2017, Saari was seen by Gary, S. Kilpela, Psy.D.  (ECF No. 6-7, PageID.553.)  On mental status examination, Dr. Kilpela noted that Saari's mood was anxious but she had decent eye-contact and attention span, spoke in a normal fashion, and displayed average intelligence.  (*Id.*, PageID.554.)

The next mental status examination occurred in August of 2018, when Dr. Leja began including mental status examinations of Saari during physical exams. (ECF No. 6-8, PageID.582.)  Dr. Leja's findings consisted of appropriate mood and affect during five visits over the course of a seven month period.  (*Id.*, PageID.568,575,577,581,583.)

In addition, Saari received mental examinations from Lori L. Armstrong, NP, in August of 2018 (ECF No. 6-8, PageID.610.) and from Daniel T. Tetzlaff, Psy.D., in November of 2018 (ECF No. 6-9, PageID.851).  On examination, Armstrong reported that Saari was cooperative, engaged, and pleasant.  (ECF No. 6-8, PageID.612.) Armstrong also observed that Saari's concentration, judgment, impulse control, and insight were good.  (*Id.*)  Dr. Tetzlaff observed that Saari was cooperative, engaged, and pleasant but noted that Saari's impulse control was questionable, and her judgment and insight were only fair.  (ECF No. 6-9, PageID.855-856.)

In May of 2019, Dr. Leja noted that Saari's mood and affect were anxious and manic during a physical exam.  (ECF No. 6-8, PageID.564.)  However, in November and December of 2019, Mercy Odueyungbo, M.D., indicated on examination that Saari had appropriate affect and mood, and was cooperative with no acute distress. (ECF No. 6-10, PageID.1002,1007.)

In February and April of 2020, Scott P. Van Sant, M.D., performed mental status examinations during psychiatric evaluations.  (ECF No. 6-10, PageID.1014-1046.)  During the February 2020 examination, Dr. Van Sant indicated that Saari was alert, oriented, and with normal speech but, he also noted that her mood was anxious with tearful affect.  (*Id.*, PageID.1045.)  During the April 2020 examinations, Dr. Van Sant again observed that Saari was alert, oriented, and with normal speech but, he also noted that her mood was depressed or sad.  (*Id.*, PageID.1015,1021,1024.)

### III.   ALJ's Decision

ALJ Ritter's sixteen-page decision is the focus of this appeal.  In this decision, ALJ Ritter stated the five-step sequential process used to determine whether an individual is disabled.  (ECF No. 6-2, PageID.79-94.)

Before stating his findings at each step, the ALJ found that Saari met the insured status requirements of the Social Security Act through June 30, 2021.  (*Id.*, PageID.82.)

At step one, the ALJ found that Saari had not engaged in substantial gainful activity since March 19, 2017, the alleged onset date.  (*Id.*)

At step two, the ALJ found that Plaintiff had the following severe impairments: psoriatic arthritis, depression/bipolar II disorder, and anxiety.

At step three, the ALJ found that Saari did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R., Part 404, Subpart P, App'x 1. (*Id.*) The ALJ noted that he had considered and rejected the following listings: Listing 14.09 (relating to inflammatory arthritis), Listing 12.04 (relating to depressive, bipolar, and related disorders), and Listing 12.06 (relating to anxiety and obsessive-compulsive disorders). (*Id.*, PageID.43-45.)

Before going on to step 4, the ALJ made findings regarding Plaintiff's RFC. The ALJ stated the following:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except with no climbing of ladders, ropes, or scaffolds. She must also avoid concentrated exposure to unprotected heights, hazards, and the use of dangerous moving machinery. Finally, the claimant is limited to simple, routine, and repetitive tasks, and occasional interaction with the public.

(*Id.*, PageID.85.)

In determining Saari's RFC, the ALJ considered Saari's description of her symptoms. The ALJ noted that he was utilizing a two-step process to evaluate these symptoms. First, he considered whether Saari's impairments could reasonably be expected to produce her pain and other symptoms. Second, he considered the intensity, persistence and limiting effects of these symptoms to

5

determine the extent to which they limit Saari's functional limitations.   (*Id.*, PageID.86.)

The ALJ outlined Saari's statements from her function report.   (*Id.,* PageID.86-87.)

The ALJ concluded that Saari's medically determinable impairments could reasonably be expected to cause her alleged symptoms.   But the ALJ found that Saari's statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (*Id.*, PageID.87.)  The ALJ based his conclusion that Saari's description of her symptoms was inconsistent on two parts of the record.  First, the ALJ found that the medical records fail to substantiate Saari's allegations of disabling symptoms and limitations due to her psoriatic arthritis.  (*Id.*, PageID.88.) Records indicate that treatment has been effective and Saari demonstrated good function on examination.  (*Id.*)  Second, in regards to Saari's mental impairments, the ALJ concluded that treatment records demonstrate good function on examination despite her symptoms.  (*Id.*)  The medical evidence of record does not include hospitalizations or similarly intensive medical treatment, and Saari was able to attend online college classes during this time.  (*Id.*, PageID.89.)

At step four, the ALJ found that Saari was capable of performing past relevant work as a hospital food service worker.  (*Id.*, PageID.91.)  The ALJ concluded that this work does not require the performance of work-related activities precluded by Saari's RFC.  (*Id.*)

Finally, at step five, after considering Saari's RFC, age, education, and work experience, the ALJ determined that a significant number of other jobs exist in the national economy that Saari can perform.  (*Id.*, PageID.92.)

## IV.    Standard of Review

Review of an ALJ's decision is limited to two issues: (1) "whether the ALJ applied the correct legal standards," and (2) "whether the findings of the ALJ are supported by substantial evidence."  *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); 42 U.S.C. § 405(g).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence.  42 U.S.C. § 405(g).

Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole, and take into account whatever evidence in the record fairly detracts from its weight.  *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984) (citations omitted). The substantial evidence standard presupposes the existence of a zone within which the

7

decision maker can properly rule either way, without judicial interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

In cases where the Appeals Council considers new evidence but declines to review a claimant's application on the merits, the Court must base its review of the ALJ's decision only upon the administrative record presented to the ALJ. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). However, the court can remand the case for further administrative proceedings under sentence six of 42 U.S.C. § 405(g). Sentence six of 42 U.S.C. § 405(g) permits the court to consider evidence not submitted to the ALJ in determining if a remand is appropriate. If the claimant shows that the evidence is new and material, and there was good cause for not presenting it in the prior proceeding, the Court can remand the case for further administrative proceedings under sentence six.

## V.     Analysis

Saari argues, first, that the ALJ erred in not considering her health records from inpatient hospitalization at UP Health System Marquette, dated August 5, 2019, through August 10, 2019, and a medical source statement completed by her psychiatrist, Loretta Leja, M.D., on June 15, 2020. Second, Saari argues that the

8

ALJ erred in failing to properly evaluate the evidence of record as a whole, including her activities of daily living and treatment records.

### A.     Five-Step Sequential Analysis

Generally, the ALJ must employ a five-step sequential analysis to determine whether the claimant is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 404.1520; *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). At step one, the ALJ determines whether the claimant can still perform substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, the ALJ determines whether the claimant's impairments are considered "severe."   20 C.F.R. § 404.1520(a)(4)(ii).   At step three, the ALJ determines whether the claimant's impairments meet or equal a listing in 20 C.F.R. part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii).  Before proceeding to step four, the ALJ determines the claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e).  At step four, the ALJ determines whether the claimant has the RFC to still perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  At step five, after considering the claimant's RFC, age, education, and work experience, the ALJ determines whether a significant number of other jobs exist in the national economy that the claimant can perform.  20 C.F.R. § 404.1520(a)(4)(v).  If the ALJ determines the claimant is not disabled under any step, the analysis ceases and the claimant is declared not disabled.  20 C.F.R § 404.1520(a)(4).  Here, the ALJ correctly stated this five-step sequential process and then based his decision on it.

B.     **The ALJ's Consideration of Additional Evidence.**

During Saari's oral hearing on May 29, 2020, the ALJ asked Saari's attorney, Jennifer Morgan, if she had any new exhibits to offer or if she considered the record to be complete. (ECF No. 6-2, PageID.103.) Morgan informed the ALJ that she had two new exhibits to offer and that she would upload the two new exhibits to the record, one from UP Health System Portage and the other from Copper Country Mental Health. (*Id*.) She also stated that she was waiting on a medical source statement from Dr. Leja. (*Id*.) The ALJ informed Morgan that the medical source statement from Dr. Leja would not be accepted because he would not hold the record open for treating source statements that were not already in existence. (*Id*., PageID.104.) Morgan did not object to this decision. (*Id*.)

At the end of the hearing, the ALJ asked Morgan if all the evidence was on the record and Morgan confirmed that she uploaded the previously discussed evidence that was currently available. (*Id*., PageID.138.) The ALJ confirmed the record was complete, and neither Saari nor Morgan objected. (*Id*.)

Saari received an unfavorable decision from the ALJ in June of 2020. (*Id*., PageID.76.) In November of the same year, Saari sought review from the Appeals Council and submitted additional evidence in the form of Dr. Leja's medical source statement and the inpatient hospitalization records from UP Health System Marquette. (*Id*., PageID.21,74.) Saari's arguments on appeal are therefore based on evidence that neither she nor her attorney presented to the ALJ.

10

When new evidence is submitted, the Appeals Council "will review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b). Claimants are required to show that there is a reasonable probability that the additional evidence would change the outcome of the decision (ECF No. 6-2, PageID.22.). Here, the Appeals Council found that the evidence did not show a reasonable probability that it would change the outcome of the decision, and they denied review. (*Id.*, PageID.22.).

As noted above in the Standard of Review, where the Appeals Council considers new evidence but declines to review a claimant's application on the merits, the Court's review must be based upon the administrative record presented to the ALJ. *Cline*, 96 F.3d at 148. In determining if a remand is appropriate, the Court can consider evidence not presented to the ALJ under sentence six of 42 U.S.C. § 405(g). In order to receive a sentence six remand, the claimant must show that the evidence is new and material, and there was good cause for not presenting it in the prior proceeding.

In Saari's brief, she alludes to the standard for a sentence six remand but does not include any developed argument or legal authority supporting this request. (ECF No. 11.) Issues raised in a perfunctory manner are deemed waived. *See Curler v. Commissioner*, 561 F. App'x 464, 475 (6th Cir. 2014).

11

Even assuming that this issue had not been waived, Saari has not satisfied the statutory burden for remanding this matter to the Commissioner under sentence six of 42 U.S.C. § 405(g).

The inpatient hospitalization records from UP Health System Marquette are neither new nor is there good cause as to why this evidence was not obtained earlier and submitted to the ALJ before his decision. The records stem from a hospitalization in August 2019, almost ten months before the ALJ's final decision. Saari did not address her burden of demonstrating good cause in her brief.

Unlike the inpatient hospitalization records, Dr. Leja's medical source statement is new and Saari establishes good cause in her brief. The statement is considered new because Dr. Leja generated her source statement eleven days after the ALJ's final decision. In demonstrating good cause, Saari states that Dr. Leja was working on the statement prior to the hearing but was unable to finish it in time due to her increased workload during the COVID-19 pandemic.  (ECF No. 11, PageID.1094.)

Despite establishing these two elements, Saari is unable to establish the element of materiality.  In order to establish materiality, a plaintiff must show that the introduction of new evidence would have reasonably persuaded the Commissioner to reach a different conclusion.  *Glasco v. Comm'r of Soc. Sec.*, 645 F. App'x 432, 437 (6th Cir. 2016).  Statements that are not based on any new clinical diagnostic techniques would not make a different result reasonably probable on remand.  (*Id.*)  Dr. Leja's statement is based on the same patient encounters that

were included on the record of the initial administrative proceedings. Out of seven physical evaluations performed by Dr. Leja, five indicated that Saari had appropriate mood and affect. Dr. Leja's opinion that Saari suffers from severe limitations is contradicted by the results of numerous physical examinations and Saari's self-reported activities. Dr. Leja's medical opinion does not show a reasonable probability that it would change the outcome of the decision.

### C. The ALJ's Evaluation of the Evidence of Record as a Whole.

Saari asserts that the ALJ did not properly evaluate the evidence of the record as a whole. The undersigned does not agree. The ALJ evaluated Saari's treatment records, medical opinions, and activities of daily living, in concluding that Saari retained the RFC to perform a reduced range of medium work. Saari has not persuaded the court that the ALJ improperly evaluated the evidence of record.

In considering treatment records, the ALJ properly weighed physical examination findings with Saari's allegations of disabling symptoms. (ECF, No. 6-2, PageID.86-88.) During examination of her psoriatic arthritis, Saari reported that her symptoms had improved on the medication Humira and she was exercising five days a week. In addition, a physician noted in 2018 and 2019 that her condition was clinically stable. (ECF No 6-2, PageID.88.) Examinations revealed good function and there is no report of an assistive device. (*Id*.) The ALJ specifically acknowledged Saari's statements regarding her use of crutches when her knees go out but noted that the medical evidence of record did not align with this description. (*Id*.) During mental status examinations, both physicians and psychiatrists largely

observed good function despite Saari's symptoms. In considering Dr. Kilpela's examination in December of 2017, the ALJ noted that the psychiatrist's opinions are not persuasive because they were based on Saari's self-report and not clinical findings. (*Id.*, PageID.90.)

The ALJ properly evaluated Saari's activities of daily living in considering the evidence of record as a whole. (*Id.*, PageID.86-87.) The ALJ discussed Saari's ability to do simple household chores, handle money, spend time with friends and family, and goes for walks. (*Id.*) The ALJ also noted that Saari's depression and anxiety impacts her ability to go out in public at stores or restaurants. (*Id.*) In looking at Saari's education, the ALJ weighed her successful attendance of college classes with her claim that she was unable to continue with any further education due to social anxiety. (*Id.*) Ultimately, the ALJ determined that while Saari clearly suffered from severe physical and psychological impairments, the evidence of record did not indicate disabling limitations. (*Id.*, PageID.88.) The Courts role is not to re-weigh the evidence of record. *Garner*, 745 F.2d at 387. Instead, the Court must determine whether the ALJ's decision is supported by substantial evidence. The Court concludes that it is.

## VI.    Conclusion

In this case, the ALJ's exclusion of Saari's additional health records was proper. The records did not create a reasonable probability that the ALJ's decision would change if he were to consider them, and therefore they cannot be considered material. Additionally, the ALJ's RFC assessment was based upon a proper

evaluation of the evidence of record as a whole.  Substantial evidence supports the ALJ's conclusion that Saari's description of the disabling effects of her symptoms were inconsistent with the evidence of the record.

There is substantial evidence in the record that supports the ALJ's decision that Plaintiff is not disabled as defined by the Social Security Administration.

Accordingly, the decision of the Commissioner is AFFIRMED and Plaintiff's request for relief is DENIED.


/s/ *Maarten Vermaat*
Maarten Vermaat
U. S. MAGISTRATE JUDGE

Dated:  July 19, 2022

15